Mary KNOWLES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 13734.

United States Court of Appeals District of Columbia Circuit.

Argued March 21, 1960.

Decided June 18, 1960.

Mr. Henry W. Sawyer, III, of the bar of the Supreme Court of Pennsylvania, pro hac vice, Philadelphia, Pa., by special leave of court, with whom Mr. George Herbert Goodrich, Washington, D. C., was on the brief, for appellant.

Mr. William Hitz, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher, Lewis Carroll and Miss Doris H. Spangenburg, Asst. U. S. Attys., were on the brief, for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a contempt of Congress case, under 2 U.S.C.A. § 192. Tried by the District Court, a jury having been waived, appellant was found guilty on 52 counts of an indictment charging her with refusal to answer certain questions put to her by a Senate Subcommittee.[1] She has appealed from the judgment of conviction.[2] In this court, the Govern-

ment has abandoned some of the counts of the indictment. It now claims that appellant was properly convicted under Count 1 of failing to answer the question "Did you, or do you, know Herbert Philbrick?" at a hearing held on July 29, 1955, and under some 27 other counts for failing to answer certain questions at a hearing held on September 15, 1955.

In convicting appellant on these counts, the trial judge found that the questions contained therein were pertinent to the subject under inquiry and that appellant "was fully apprised" of that subject. It appears that the trial judge believed the Committee was investigating "the Communist movement in New England," and that he considered she was sufficiently apprised of the subject because the Committee was not obliged "to proceed in the execution of its duties by a series of inquiries on precise topics embraced within the express subject matter delegated to it by the enabling resolutions." Appellant argued at trial and continues to urge that neither the subject under inquiry nor the pertinency of the questions was indisputably clear at the time of the Committee hearings.

The facts, briefly, are these: Appellant had on two earlier occasions, in 1953, appeared before the same Subcommittee. She was at that time advised by the Subcommittee that one Herbert Philbrick had, at a previous hearing, identified her as a member of the Communist Party. Appellant was then asked questions concerning Mr. Philbrick and others, and refused to answer by reason of the Fifth Amendment privilege against self incrimination. After the 1953 hearings, appellant was discharged from her position as a librarian in Norwood, Massachusetts, but obtained similar employment at a library maintained by a Quaker group in Pennsyl-

1. The Subcommittee to Investigate the Administration of the Internal Security Act and Other Internal Security Laws, of the Committee on the Judiciary of the United States Senate.

2. The circumstances under which the appeals in this case and seven other contempt of Congress cases came on for hearing in this court appear in footnote 2 of the opinion in Gojack v. United States, 1960, 108 U.S.App.D.C. ——, 280 F.2d 678.

vania. That group became subject to considerable pressure in the community to dismiss appellant from her position as librarian. It resisted this pressure, and was later presented with an award of $5,000 by the Fund for the Republic for the stand it had taken.

After these occurrences, which aroused much public interest, appellant was called again before the Subcommittee, appearing on July 29, 1955. At this hearing, no statement was made as to the Subcommittee's purpose in calling her, or as to the subject matter of the inquiry. The questions asked were of the same general nature as those appellant had refused to answer at the 1953 hearing, together with some concerning the events of the intervening years. When asked the Count 1 question ("Did you, or do you, know Herbert Philbrick?"), appellant replied:

> "On this matter of acquaintances or nonacquaintances, or anything to do with Communist affiliations or nonaffiliations, I would like to tell the committee here what I have told my employers at the Plymouth Meeting Library Committee, that for many years now I have had no connection, formal, or any other way, with any organization that would be either on the Attorney General's list or would be a so-called subversive organization or left-wing organization. And I think that any other questions, including this question here would, in my opinion, and upon the advice of counsel, be beyond what I understand to be the jurisdiction of this committee and of its resolutions." [3]

Appellant was directed to answer. She made a further objection, as follows:

> "The reason I feel that I cannot answer this question about Herbert Philbrick is that I think it invades constitutional rights as under the first amendment, and I feel even

more strongly that these questions have no pertinency to the question of national security at the moment, and any relationships or nonrelationships are not valid points of inquiry at this time." [4]

The Chairman again directed her to answer, adding:

> "The objections as to pertinency are overruled.
>
> "We are charged by a Senate resolution to conduct a certain type of investigation. We are doing so. I must warn you that you may be cited for contempt if you do not answer." [5]

Appellant persisted in her refusal to answer the Count 1 question, and similar questions, but did answer questions not involving her association with other persons.

Some two months later, on September 15, 1955, appellant again was called upon to appear before the Subcommittee. After being asked a number of routine questions, which she answered, she was asked what her address was when she lived in Malden, Massachusetts. She replied:

> "I would like at this time—tell me if you can hear this—I would like at this time to say that this is the third time that I have been called to Washington, and that on this occasion, as on the other occasions, I have the same thing to say: First, that I am not a Communist; that I am not a member of the Communist Party, and that for many, many years I have had no connection, direct or indirect, with any organization on the Attorney General's list.
>
> "Further than that I have no knowledge of any matters concerning national security; I have no knowledge of any matters concerning the Internal Security Act of 1950 [50 U.S.C.A § 781 et seq.]; I have no knowledge of any matters

---

3. S.Rep. No. 1765, 84th Cong., 2d Sess. 6 (1956) (sometimes hereinafter referred to as "Report").

4. Id. at 7.

5. Ibid.

of subversion, sabotage, or espionage, of infiltration, of violent overthrow of the Government, of any acts concerning any foreign powers or any other illegal act.

"In view of these things and the fact that I am a private citizen employed in a private institution under the care of a religious organization, I feel that I have no information that would be within the power or the jurisdiction of this duly organized committee to ask of me."[6]

The presiding officer then stated:

"Mrs. Knowles, you were called before this committee, I think, one time before. As I look back at the record I believe it was on May 21, 1953.

"At that time this committee was inquiring particularly into your association and affiliation with the Communist Party. We asked you at that time if you were a member of the Communist Party, and you declined to answer the question.

"Now certain matters have come to the information of this committee, and we are now seeking to bring up to date our record.

"Were you ever a member of the Communist Party Mrs. Knowles?"[7]

Appellant declined to answer, on the basis of the objections she had previously made. Nearly three hundred other questions were asked. Again, appellant refused to answer those which probed into her associations. She answered the numerous questions which related to her work in Pennsylvania and to the award made by the Fund for the Republic.

At neither of the hearings here involved—that of July 29 and that of September 15—did appellant receive any clear explanation of the Subcommittee's purpose in questioning her, let alone what was the subject of the investigation. She indicated that she believed the subject under inquiry at the July 29 hearing was "national security," and as

to Count 1—the only count remaining which relates to that hearing—her objection was based in part on its lack of pertinency "to the question of national security."

Assuming, however, that the trial court could have rightly interpreted appellant's objection and her testimony as indicating awareness, beyond a reasonable doubt, that the Subcommittee at its July hearings was investigating "the Communist movement in New England", surely the Government has not proved beyond a reasonable doubt that the pertinency of the question was so indisputably clear that she perceived or should have perceived the likelihood of criminal prosecution. Watkins v. United States, 1957, 354 U.S. 178, 217, 77 S.Ct. 1173, 1 L.Ed.2d 1273. Appellant said to the Subcommittee that "for many years now I have had no connection, formal, or any other way with any organizations that would be either on the Attorney General's list or would be a so-called subversive organization or left-wing organization." Her claim was that any of her associations with persons whose activities might interest the Subcommittee were too remote in time and too insubstantial to be pertinent to the legislative purposes which she understood the Subcommittee to be then pursuing. Cf. id. at 204. The conduct of the witness before the Subcommittee was at all times respectful, and the Government offered nothing at the trial which would tend to prove that she was not in fact seeking to be enlightened on the pertinency of the question in Count 1. Absent any such proof, the witness was entitled to an explanation which would serve to disabuse her of any mistaken notions about subject matter and pertinency. The Subcommittee did not offer such explanation. Cf. id. at 209.

At the subsequent hearing on September 15, 1955, Mrs. Knowles suggested similar uncertainty as to subject under investigation and pertinency of the questions. As we have noted, her objections

6. Id. at 12–13.

7. Id. at 13.

at the opening of the September hearing disclaimed any knowledge about "national security * * * matters concerning the Internal Security Act of 1950 * * * matters of subversion, sabotage, or espionage, of infiltration, of violent overthrow of the Government, of any acts concerning any foreign powers or any other illegal act."

The witness may thus have revealed knowledge of the terms and breadth of the resolution under which the Subcommittee was proceeding, and perhaps that all of these matters were possible subjects of inquiry. At no stage, however, did the Subcommittee make plain to her which of these topics it was pursuing. Perhaps it was pursuing them all. But the pertinency of any particular question to any particular topic was not explained to the witness, though her objections invited explanation.[8] Many of the questions asked of her (which she answered) related to the Fund for the Republic and are not in any obvious way within the scope of the Subcommittee's enabling resolution. The Government does not argue that they were. They were not, of course, the subject of any of the indictment counts.

At the trial, the Government did not attempt to prove that any particular topic was the subject under inquiry. On the contrary, the Government witness—Mr. Sourwine, the Committee counsel—testified:

"Mrs. Knowles, like every other witness before the committee, was called under the committee's full authority in connection with the entire scope of the committee's power to investigate, and she was asked, as every witness will be asked, all of the questions that the committee thought would produce information in any area of any of its inquiry."

In this court, the Government takes the position that the subject under inquiry was "an investigation into Communism"; "the Subcommittee's authority under S. Res. 366". But no one told this to appellant at the hearings. Her counsel informed the Subcommittee at the start of the July hearing that he had just been given a copy of the resolution, and that he had not previously had a copy or been familiar with its contents. There is little to indicate that Mrs. Knowles had any clear understanding of it.[9] She probably had read the resolution by the time of the September hearing; her objections at that hearing may, as we have said, indicate as much. But no one related the questions asked to the resolution, or to any specific portion of it, in answer to her objections.

The Government has thus failed to establish the subject matter of the inquiry, much less that it was made to appear with "undisputable clarity" to appellant. Watkins v. United States, supra, 354 U.S. at page 214, 77 S.Ct. at page 1193; Barenblatt v. United States, 1959, 360 U.S. 109, at page 117, 79 S.Ct. 1081, at page 1088, 3 L.Ed.2d 1115. The judgment of conviction must therefore be reversed and the case remanded with instructions to dismiss the indictment.

It is so ordered.

---

8. At one stage, Mrs. Knowles said: "Well, perhaps, you could tell me some of the fields that I might have information in; I don't know." The Committee counsel replied: "The committee does not have to inform the witness at the outset as to the full purpose of its questioning, and the committee does not have to speculate publicly, and on the record, concerning the information which you have." Report at 17.

9. She did say, in objecting to the Count 1 question, that counsel had advised her, and it was her own opinion, that that question was "beyond what I understand to be the jurisdiction of this committee and of its resolutions." But no one explained why the committee considered the question to be within the scope of the resolution.